UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JAMES G., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1885-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff James G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 22).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 18, 21. Plaintiff did not file a reply. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 18) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 21) is **GRANTED**.

## BACKGROUND

On October 17, 2017, Plaintiff protectively filed his DIB and SSI applications alleging disability beginning April 1, 2015 (the disability onset date), due to a variety of musculoskeletal impairments, migraines, asthma, anxiety, and depression.  Transcript ("Tr.") 79-80, 171-78, 191. Plaintiff's claims were denied initially on January 3, 2018 (Tr. 102-09), after which he requested

a hearing (Tr. 110-13). On August 20, 2019, Administrative Law Judge Bryce Baird (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 16, 38-78. Plaintiff appeared and testified at the hearing and was represented by Justine Miller, an attorney. Tr. 15. Joseph Atkinson, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on December 27, 2019, finding that Plaintiff was not disabled. Tr. 16-32. On October 16, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's December 27, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 27, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since April 1, 2015, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: lumbar disc bulges, depression, anxiety, migraine headaches and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).[1] Specifically, he could lift, carry, push or pull up to 10 pounds occasionally and up to 5 pounds frequently, stand or walk up to two hours in an eight-hour workday and sit up to six hours in an eight-hour workday. He further is limited to occasional climbing of ramps or stairs, but never climbing of ladders, ropes or scaffolds. He is limited to occasional balancing, stooping and kneeling, but he could never crawl. The claimant could tolerate no more than a "loud" noise environment, as that term is defined by the Selected Characteristics of Occupations, an appendix to the Dictionary of Occupational Titles, and he could tolerate no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gases and poor ventilation. The claimant further could never tolerate excessive vibration or exposure to hazards such as unprotected heights and moving machinery, in addition to tolerating no direct exposure to bright or flashing lights. The claimant further is limited to work involving simple, routine tasks that could be learned after a short demonstration or within 30 days. He is subject to work allowing a person to be off task 5% of the workday, in addition to regularly scheduled breaks. He could not perform a job requiring driving a vehicle and he is limited to work that does not require travel to unfamiliar places.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 27, 1994 and was 20 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 16-31.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on October 17, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 32. The ALJ also determined that based on the application for supplemental security benefits protectively filed on October 17, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## <u>ANALYSIS</u>

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ's finding that Plaintiff would be off task 5% of the workday beyond regularly scheduled breaks was not supported by substantial evidence. *See* ECF No. 18-1 at 1, 22-29. Next, Plaintiff argues that the ALJ improperly substituted his own lay opinion for that of any physician regarding Plaintiff's physical limitations. *See id*. at 1, 29-34. Accordingly, argues Plaintiff, the ALJ's RFC finding was not supported by substantial evidence.

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff had the physical RFC to perform a range of sedentary work. *See* ECF No. 21-1 at 8-18. In addition, argues the Commissioner, the ALJ appropriately relied on medical opinion

evidence, and also considered other evidence in the record to find (favorably to Plaintiff) a somewhat more restricted range of work activities than stated in the opinion evidence. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's RFC finding was supported by substantial evidence.  Contrary to Plaintiff's argument, the fact that the ALJ did not base the RFC finding entirely on a medical opinion does not mean that the RFC was based on the ALJ's lay assessment, or that it was unsupported by substantial evidence. As explained below, the regulations and case law specifically permit the ALJ to craft an RFC based on the record as a whole, and the ALJ's RFC finding is not required to precisely match a medical opinion.

In this case, the ALJ properly relied on multiple opinions stating that Plaintiff could sustain work activity without any need for time off-task; but, citing other medical evidence of record and Plaintiff's subjective reports, the ALJ properly concluded that Plaintiff would nevertheless be off task 5% of the workday in addition to regularly scheduled breaks. Similarly, the ALJ properly relied on multiple opinions indicating that Plaintiff could perform at least a range of light work, but he properly considered other evidence to find that Plaintiff should instead be limited to a range of sedentary work.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the

ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and

synthesizes all evidence available to render an RFC finding consistent with the record as a whole);

*Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds

for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not

the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697

F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the

sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4

(W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v.

Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot

perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency

comprehensively revised its regulations governing medical opinion evidence creating a new

regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27,

2017). Plaintiff filed his applications on October 17, 2017, and therefore, the 2017 regulations are

applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior

administrative findings.  The new regulations no longer use the term "treating source" and no

longer make medical opinions from treating sources eligible for controlling weight. Rather, the

new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical findings(s), including those from [the claimant's own] medical

sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also*

42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's finding that Plaintiff had the physical RFC for a range of sedentary work and would need to work at a job allowing him to be off task for 5% of the workday beyond normally scheduled breaks. Tr. 22. *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff first argues that the ALJ "arbitrarily limited [Plaintiff] to a 5% off-task limitation without any medical authority or substantial evidence," and therefore, the ALJ's finding was based on his own surmise. *See* ECF No. 18-1 at 27. According to Plaintiff, remand is required because the 5% off-task limitation is not tethered to a particular medical opinion. However, Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one.

Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the

case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Furthermore, an ALJ is permitted to craft an RFC based on medical records and other evidence, without a supportive medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental functioning); *Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) (summary order)

11

(affirming where ALJ relied on variety of evidence including claimant's testimony and doctor's letter vaguely asserting severe limitations but noting improvement).

Contrary to Plaintiff's contentions, the ALJ's RFC finding was supported by substantial evidence and not based on the ALJ's own surmise as Plaintiff argues. *See* ECF No. 18-1 at 23-24 (citing *Cosnyka v. Colvin*, 576 Fed. App'x. 43, 46 (2d Cir. 2014) (summary order)). Courts in this Circuit have allowed ALJs to assess percentage off-task limitations even untethered from opinion evidence, as long as substantial evidence supported the finding. *See, e.g., Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (rejecting argument that ALJ could not "assign[] a particular percentage range" to the off-task limitation because substantial evidence supported such finding, and noting that cited contrary cases involved findings with no substantial evidentiary support); *Christopher H. v. Comm'r of Soc. Sec.*, No. 20-CV-0878MWP, 2022 WL 282813, at *6 (W.D.N.Y. Jan. 31, 2022) (finding ALJ appropriately assessed 5% off-task limitation based on opinion evidence to which ALJ gave "some weight" as well as plaintiff's testimony about concentration and communication problems) (collecting cases); *Hallman v. Comm'r of Soc. Sec.*, No. 19-cv-00683, 2020 WL 3259255, at *4 (W.D.N.Y. June 16, 2020) (finding, based on evidence as a whole, that it was "reasonable that the ALJ would afford plaintiff an off-task allowance to account for his subjective complaints").

Unlike the cases cited by Plaintiff in support of his position, the Court finds that the 5% off-task limitation assigned by the ALJ here was supported by substantial evidence.  For example, in *Cosnyka*, the ALJ relied upon the opinion of an orthopedic examiner that the claimant would require "regular comfort breaks," which the ALJ translated into a limitation that the claimant would need a break for six minutes out of every hour. 576 F. App'x at 46. The Second Circuit determined that remand was appropriate because nothing in the record, including the medical records or the claimant's testimony, supported the ALJ's conclusion, and indeed some evidence

was "to the contrary." *Id*. In *Mariani v. Astrue*, the ALJ rejected the treating physician's conclusion that the plaintiff could not use his hand at all, but the Second Circuit found that there was not substantial evidence in the record for the ALJ's alternative conclusion that the plaintiff could use his hand fifty percent of the time, despite medical evidence "at both ends of the spectrum." 567 F. App'x 8, 10 (2d Cir. 2014).

In this case there is no contrary or conflicting evidence. Nor does Plaintiff present any evidence to show that a greater percentage of off-task time should be assessed. *Smith v. Berryhill*, 740 F. App'x. 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found); *Dominique M. v. Comm'r of Soc. Sec.*, No. 20-CV-01247, 2021 WL 3931141, at *4 (W.D.N.Y. Sept. 2, 2021). Finding that Plaintiff would be off task for essentially three minutes each hour of the workday is not unreasonable in light of the evidence presented, including VE testimony that an accepted rate of off-task time for the jobs Plaintiff could perform is up to 10% of the workday in addition to normal breaks. Tr. 74. Further, the ALJ carefully crafted the RFC so that it does not specifically require the off-task time, but rather, allows such off-task time. Tr. 22. This is further highlighted by the question posed to the VE, *i.e.*, not that Plaintiff *will* be off task 5% of the workday but rather whether such jobs would *allow* Plaintiff to be off task 5% of the day.

Moreover, by incorporating a 5% off-task limitation into Plaintiff's RFC, the ALJ's finding was more restrictive than what is supported by the medical and opinion evidence. Thus, the Court finds no error in this regard. *See Byrd v. Saul*, No. 18-CV-01244, 2020 WL 888044, at *4 (W.D.N.Y. Feb. 24, 2020) (rejecting argument that the ALJ improperly assessed plaintiff with a 5% off-task limitation without "tethering" such assessment to any medical evidence); *see generally Yargeau v. Berryhill*, No. 16-CV-0706, 2018 WL 1335388, *3 (W.D.N.Y. 2018) ("[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is

13

generally not a basis for remand"); *Shorter v. Comm'r*, 2014 WL 1280459, \*10 (N.D.N.Y. 2014)
("[i]n light of the other substantial evidence in the record supporting the ALJ's RFC determination
and the fact that the RFC determination is actually more restrictive than [State agency consultant's]
assessment, any error in considering this report was harmless"); *Thomas S. v. Comm'r of Soc. Sec.*,
2021 WL 1293105, \*4 (W.D.N.Y. April 7, 2021) ("the ALJ did not commit remandable error in
making a determination that [p]laintiff would be off-task 5% of the workday where the limitation
did not correspond to a specific medical source opinion") (citing *Johnson v. Colvin*, 669 F. App'x
44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0–10%) to
illustrate Johnson's limitation does not undermine the fact that the ALJ's finding was supported by
substantial evidence.")).

    Although Plaintiff correctly points out that the ALJ did not specifically mention the off-
task limitation, (*see* ECF No. 18-1 at 27), the ALJ need not discuss every shred of evidence, as
long as the Court can glean the rationale for the ALJ's finding from the entire decision and the
evidence of record. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (citing *Mongeur v.
Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *see Melissa F. v. Comm'r of Soc. Sec.*, No. 1:20-
CV-1363 (WBC), 2021 WL 3887256, at \*5 (W.D.N.Y. Aug. 31, 2021) (rejecting plaintiff's
challenge to ALJ's opinion evaluation because "the ALJ's reasoning [could] be gleaned from the
record") (citing *Cichocki*, 729 F.3d at 178 n.3).

    In this case, it is evident that the ALJ credited multiple opinions of record that Plaintiff
could largely sustain work activity on a regular and continuing basis, but nevertheless believed
that Plaintiff's "mild to moderate" pain and mental symptoms justified the off-task limitation based
on the other evidence. Tr. 28.

    First, the ALJ considered the opinion of medical consultative examiner Trevor Litchmore,
M.D. ("Dr. Litchmore"). Tr. 531-38. Dr. Litchmore conducted an Internal Medicine Examination

("IME") on December 7, 2017 and opined only that Plaintiff had restrictions regarding exposure to pulmonary irritants, and moderate limitations regarding the use of his right hand. Tr. 534. The ALJ found this opinion "largely persuasive" but noted that the evidence justified additional limitations. Tr. 28-29.

Next, the ALJ considered the opinion of consulting orthopedic surgeon Robert R. Karpman, M.D. ("Dr. Karpman"). Tr. 29. Dr. Karpman conducted an IME on January 26, 2016, in relation to Plaintiff's Workers' Compensation claim. Tr. 456-59. Dr. Karpman opined that Plaintiff could work with no lifting greater than 15 pounds, and without "prolonged repetitive bending of the back." Tr. 458. The ALJ found this opinion "somewhat persuasive," concluding that the medical evidence nevertheless justified a reduction to "a reduced range of sedentary" work. Tr. 29.

The ALJ also considered the opinion of state agency medical consultant G. Ehlert, M.D. ("Dr. Ehlert"). Tr. 29. Dr. Ehlert reviewed the file on January 2, 2018, and January 3, 2018, and found that Plaintiff could perform a range of light work with no time off task. Tr. 97-100. The ALJ also found this opinion "somewhat persuasive," concluding that the medical evidence nevertheless justified a reduction to sedentary work with the additional restrictions noted in the RFC. Tr. 29.

On December 7, 2017, psychological consultative examiner David Schaich, Psy.D. ("Dr. Schaich"), assessed mild limitations in sustaining concentration and performing tasks at a consistent pace and in sustaining an ordinary routine and regular work attendance. Tr. 528-29. The ALJ found this opinion "largely persuasive" but credited some of Plaintiff's testimony regarding his anxiety and depression and added mental restrictions to the RFC. Tr. 29-30.

Finally, state agency psychological consultant G. Kleinerman ("Dr. Kleinerman"), reviewed Plaintiff's file on December 19, 2017, and January 3, 2018, and opined that Plaintiff had no severe mental impairment, finding no limitation on Plaintiff's ability to concentrate, persist,

and maintain pace. Tr. 95-96. The ALJ also found this opinion "largely persuasive" but with the same caveats previously noted. Tr. 30. Thus, while agreeing that Plaintiff could sustain work activity on a regular and continuing basis, the ALJ nevertheless partially discredited the opinions based on other evidence to find that Plaintiff would be off-task 5% of the workday, which, as explained above, he is permitted to do.

In addition to considering multiple medical opinions, the ALJ also discussed the clinical evidence and Plaintiff's treatment history. First, the ALJ noted the "rather mild to moderate clinical and diagnostic abnormalities." Tr. 24, 27. For instance, he cited imaging evidence showing minimal or mild changes in the spine. Tr. 24-25, 27, 558, 600-02, 637-38). The ALJ also cited an EMG study that was negative for radiculopathy or neuropathy. Tr. 25, 27, 595, 645.

The ALJ also considered Plaintiff's relatively normal mental status findings, including normal alertness, orientation, memory, and general intellectual capacity. Tr. 27, 398-99. Additionally, Dr. Schaich observed that Plaintiff had minimal abnormalities, noting his alertness, unremarkable speech and thought processes, full orientation, intact memory, attention, and concentration, and good insight and judgment. Tr. 30, 527-28. Furthermore, Plaintiff did not generally appear to be in acute distress or to have serious deficits of orientation, attention, or concentration during his orthopedic, neurological, and pain management visits. Tr. 257-58, 266-67, 309, 315, 356, 367, 371, 443, 520, 548, 592-93, 606-07, 623, 633, 658-59, 664, 676. Thus, the ALJ reasonably found these objective findings unsupportive of a need to be off task more than 5% of the workday.

The ALJ also considered that Plaintiff's treatment course was conservative in nature. Tr. 27. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order) (finding conservative treatment proper factor in discounting allegations of symptoms); *see also Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing

*Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function).

As the ALJ noted, Plaintiff's neurologist prescribed medication for his headaches. Tr. 26, 660. However, the record shows that Plaintiff was, at times, noncompliant and inconsistent with his headache medication. Tr. 313, 661, 667, 671. *See Wells v. Colvin*, 87 F. Supp. 3d 421, 432-33 (W.D.N.Y. 2015) (permitting consideration of medication noncompliance as negative factor in determining credibility of plaintiff's allegations); *see also Walker v. Berryhill*, No. 6:17-CV-06138 (MAT), 2017 WL 6492520, at *3 (W.D.N.Y. Dec. 19, 2017) ("An ALJ may properly take into account a history of noncompliance with medication or treatment recommendations in assessing credibility."). There were also periods where Plaintiff did not take any prescription pain medication or any pain medication at all. Tr. 548, 596.

The ALJ noted that Plaintiff also tried various conservative measures for his back pain, such as physical therapy (Tr. 319-30), chiropractic treatment (Tr. 265), injections (Tr. 548), and a back brace and TENS unit (Tr. 442). Tr. 27. Plaintiff's orthopedist indicated that his back condition was not appropriate for surgery. Tr. 258. Finally, the ALJ noted that Plaintiff engaged in some outpatient counseling for his depression and anxiety. Tr. 26, 386, 388, 389. Based on the routine and conservative nature of Plaintiff's treatment, the ALJ's finding that Plaintiff would need to be off task no more than 5% of the workday was reasonable.

The ALJ also noted that Plaintiff reported a wide range of activities of daily living that are inconsistent with his allegations of disabling symptoms and limitations. Tr. 28. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the

Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore*, 566 F.3d at 307 (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible). Specifically, the ALJ observed that Plaintiff could travel by walking, riding in a car, or the use of public transportation; prepare his own meals daily; dress, bathe, and groom; shop once a week for 30-60 minutes; pay bills and manage money; play video games; and watch television. Tr. 28, 208, 209, 210, 528. Indeed, Plaintiff reported being able to do his daily activities, though with pain. Tr. 442, 448.

Additionally, Plaintiff reported going to a live concert in December 2017, which he indicated helped his stress levels and his headache symptoms. Tr. 685, 252. He also reported attending a comic book convention and an art festival. Tr. 322) 325. Other medical records show that Plaintiff reported usually spending his time playing video games (Tr. 341), using the internet, or watching television (Tr. 528). However, at one point, Plaintiff reported reducing his video game playing to periods of no more than two hours to improve his headache symptoms. Tr. 661. Finally, in a self- completed Function Report dated October 30, 2017, Plaintiff admitted that he could complete tasks that he started. Tr. 212. These daily activities fall within the parameters of the ALJ's RFC finding, including his assessment of a 5% off-task limitation.

Based on the foregoing, substantial evidence supports the ALJ's finding that Plaintiff would only be off-task 5% of the workday beyond normal scheduled breaks. Again, Plaintiff cites no evidence that would have compelled the ALJ to conclude that Plaintiff had a greater degree of off-task restriction. *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (stating court will not reverse unless record compels contrary factual finding); *Christopher H.*, 2022 WL

282813, at *6 (noting that Plaintiff did not cite any "contradictory evidence" in challenging the propriety of ALJ's off-task limitation).

Additionally, as discussed above, the ALJ's consideration of the evidence as a whole worked in Plaintiff's favor, as simply relying on the opinion evidence credited by the ALJ would have resulted in a finding of no time off-task. *See Hallman*, 2020 WL 3259255, at *5 ("If, as plaintiff urges, the ALJ was required to base each functional limitation of her RFC on a medical source opinion, the RFC here would be less restrictive . . . ."); *see also Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (stating that individual challenging agency decision must establish that error was prejudicial); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding remand not warranted without "reasonable likelihood" that ALJ's decision would have been different absent error). Thus, the Court finds no error in the ALJ's finding that Plaintiff would need to be off task no more than 5% of the workday beyond normal scheduled breaks.

In his second point of error, Plaintiff argues that the ALJ formulated Plaintiff's RFC without any medical authority, since "the ALJ effectively rejected all of the medical opinions in the record as stale."  *See* ECF No. 18-1 at 31-34. However, Plaintiff's argument seems to misunderstand the meaning of the term "stale" as used in the context of medical opinions in disability cases.  A medical source opinion is "stale" when the opinion can no longer be relied upon because subsequent evidence that the source could not have considered calls into question the reliability of the opinion. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order) (rejecting argument that opinion was stale because "the additional evidence does not raise doubts as to the reliability of [the source's] opinion"); *Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) (noting that opinions not accounting for subsequent deterioration in plaintiff's functioning cannot support ALJ's finding).

Plaintiff's statement that the ALJ rejected all of the medical opinions as stale is simply incorrect. Nowhere does the ALJ indicate that he found any opinion stale or rejected any opinion because of a later deterioration in Plaintiff's functioning. *See* Tr. 28-29. As with the off-task limitation discussed above, the ALJ credited multiple opinions of record consistent with an RFC for at least sedentary work but determined that Plaintiff's symptoms necessitated a further reduction to sedentary work, based on a proper consideration of the evidence of record as a whole.

Regarding Dr. Litchmore's opinion that Plaintiff had no exertional limitations (Tr. 534), Dr. Ehlert's opinion that Plaintiff could perform light work (Tr. 97-100), and Dr. Karpman's opinion that Plaintiff had a reduced light work capacity with lifting restricted to 15 pounds (Tr. 458), the ALJ explained that other evidence in the record, including evidence of disc bulges and treatment for migraines, supported a more restrictive degree of limitation than any of these physicians opined. Tr. 28-29. Thus, the ALJ evaluated the degree of consistency of the opinions with the evidence of record, and concluded that he was persuaded by the opinions, but not entirely. Tr. 28-29. *See* 20 C.F.R. § 404.1520c(b)(2), (c)(2).

A review of the other evidence of record provides substantial support for the ALJ's finding that Plaintiff could perform sedentary work. As discussed previously, the ALJ considered the relatively mild objective findings in the record, including the lack of any clinical observations showing significant difficulty sitting, or even standing and walking; Plaintiff's conservative treatment and inconsistent medication compliance with respect to his spinal impairments; and his wide range of daily activities. Tr. 24-28. The ALJ also noted that Plaintiff reported to a mental health treatment provider in February 2017 that he recently connected with a gym to begin working out and had been looking for part-time employment options. Tr. 28, 386, 388, 389. The ALJ noted that it was "laudable" that Plaintiff continued to search for suitable work despite his limitations

20

from his back injury, but he also noted that this "reflects the mindset of an individual who does not believe that he is disabled." Tr. 28.

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. As previously noted, the substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective

findings, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 21) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE